1:21-mj-3151-TMP

# AFFIDAVIT

I, Matthew Scalisi, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint charging ROBERT BEARDEN with aggravated identity theft, wire fraud, and bank fraud, in violation of 18 U.S.C. §§ 1028A, 1343, and 1344 (together, the "Target Offenses") from on or about 07/6/2020 to on or about 07/21/2020, in Cuyahoga County, in the Northern District of Ohio, Eastern Division.

2. BEARDEN devised and participated in a scheme to obtain by fraud Economic Injury Disaster Loans (EIDLs) and other economic injury grants and loans during the COVID-19 pandemic.  BEARDEN fraudulently took advantage of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), meant to assist small businesses and individuals financially affected by COVID-19. BEARDEN used the personal identifying information of third-party victims and associates to apply for and receive EIDLs and grants. BEARDEN would apply for EIDLs online via the United States Small Business Administration (SBA) disaster loan application.

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 07/07/2019.  As a Special Agent with the FBI, I am assigned to the Complex Financial Crimes Squad.  I have obtained extensive training and experience within the FBI on investigating financial crimes leading to federal prosecutions.  Before becoming a Special Agent with the FBI, I was a Special Agent with the United States Secret Service ("USSS") from July 2016 to July 2019.  While working out of the Chicago Field Office as a Special Agent with the USSS, I was assigned to the Financial Crimes Unit.  I have worked on multiple financial crime

cases that involved wire fraud, bank fraud, aggravated identity theft, and other frauds and swindles. I have recently been assigned to work with the U.S. Department of Justice and other law enforcement partners, including the Internal Revenue Service – Criminal Investigation ("IRS-CI") and the Small Business Administration Office of Inspector General to investigate possible COVID-19 program fraud. The federal government created stimulus and economic assistance programs in response to COVID-19.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from my co-case agent, Special Agent Anthony Pizzola of the IRS-CI Cleveland, Ohio office, from other members of law enforcement, and from witnesses. This affidavit is intended to merely show that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

***EIDL Program Background***

5. The provisions of The CARES Act, in conjunction with an officially declared disaster by the United States Government, allowed for the SBA to offer EIDL funding to business owners negatively affected by the COVID-19 pandemic. Using the SBA online portal, EIDL applicants submit personal and business information supporting each EIDL application, and they do not have to submit supporting documentation of any sort. Data entered into the SBA online portal for applications is transmitted by interstate wires to servers in Iowa.

6. The application includes a jurat-like paragraph where the applicant affirms that the information submitted is true and correct under the penalty of perjury and applicable criminal

statutes. The application process involves filling out various data fields relating to the size of the affected business entity, the ownership of the business, and other information such as the number of employees and gross business revenues realized in the 12 months before COVID-19 impact on the national economy. This information, submitted by the applicant, is then used by SBA systems to calculate the principal amount of money the small business is eligible to receive in the form of an EIDL. However, in conjunction with submitting an EIDL application, by simply clicking on and checking a box within the online application, an applicant may request and then receive up to $10,000 in an EIDL Cash Advance Grant based on the number of employees claimed. The EIDL Cash Advance Grant need not be repaid to the SBA if the SBA ultimately denies the loan application, or if the applicant declines the EIDL that may be offered by the SBA at a later date.

7. The SBA Office of Disaster Assistance (ODA) controls the EIDL program and is headquartered at 409 3rd Street SW, Washington, DC 20416. The ODA has authority over all loans created and disbursed under the EIDL program. EIDL principal proceeds and available Cash Advance Grants (up to $10,000) are solely funded by the SBA. They are disbursed from government-controlled accounts maintained with the U.S. Treasury at Federal Reserve Banks throughout the United States.

8. Under the provisions governing the EIDL program, loan proceeds must be used by that business on certain permissible expenses. The EIDL (working capital) loans may be used by the afflicted business, which must have existed in an operational condition on February 1,

2020, to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

***Identification of the SUBJECT TELEPHONES***

9. On 01/04/2021, the FBI executed two search warrants on BEARDEN's two smartphones (SUBJECT TELEPHONES), which the FBI obtained from BEARDEN during a probable cause arrest performed by the South Euclid Police Department. The FBI previously obtained a search warrant from this Court to seize the SUBJECT TELEPHONES which were held at FBI Cleveland. On 02/02/2021, two search warrants were issued in the United States District of Ohio to obtain the content on the SUBJECT TELEPHONES. The SUBJECT TELEPHONES were both the same make and model (LG STYLO 5X), and both were grey/silver in color. The SUBJECT TELEPHONES had cracked screens.

10. BEARDEN confirmed the phone numbers of the SUBJECT TELEPHONES in the presence of the Agents, identifying them as ("SUBJECT TELEPHONE NUMBER 1") and ("SUBJECT TELEPHONE NUMBER 2"). BEARDEN also provided agents the same passcode for the SUBJECT TELEPHONES as .

***The Scheme and the SUBJECT TELEPHONES***

11. Beginning in October of 2020, investigators received a complaint from a victim (Victim 1), that BEARDEN used Victim 1's personal identifying information to apply for COVID-19 pandemic relief through the SBA. In interviews with Victim 1, the facts that Victim 1 reported to investigators included the following:

    a. BEARDEN told Victim 1 that an unknown individual informed him the government was issuing loans and grants to individuals in order to assist them through the pandemic, saying also that, if Victim 1 wanted assistance, BEARDEN would have to apply for an EIDL online through the SBA.

b. BEARDEN applied for an EIDL on behalf of Victim 1. Approximately $4,500 was deposited into Victim 1's bank account. Victim 1 provided BEARDEN with $1,500 after the funds were deposited into Victim 1's account.

c. BEARDEN also completed his own loan package for a business called 24 Karat Gold House. BEARDEN did not conduct any legitimate business through 24 Karat Gold House. BEARDEN received a $13,000 EIDL loan for 24 Karat Gold House. SBA records also verified that BEARDEN received this EIDL. BEARDEN was listed as the sole proprietorship for the business located at 3117 East 102nd Street, Cleveland, Ohio 44104.

12. SBA records confirmed funds were deposited into Victim 1's Credit Union account number ending in 598. The name on the account was " ." On the SBA loan application, Victim 1 was considered the Owner of claimed to have ten employees. Before COVID-19, claimed to have a Gross Revenue of $165,000 for the 12 months before the disaster. During the interview with Agents, Victim 1 confirmed she owned the business, but the number of employees and the gross income were misreported to the SBA, contrary to what BEARDEN knew to be true.

13. Per SBA records, the funds were deposited into BEARDEN's  Bank Checking Account number ending in 752. The SBA funded the loan on 07/14/2020. On the SBA loan application, BEARDEN reported that 24 Karat Gold House opened on 06/07/1997, and he owned 100% of the business. BEARDEN indicated that 24 Karat Gold House only had one employee, and the gross revenue for the 12 months before the disaster was $130,000. 24 Karat Gold House was reported to be in the retail business category and provided miscellaneous services to customers.

14. BEARDEN applied for an additional EIDL loan doing business as "RLB Tint and Accessories" ("RLB"). The name on the SBA loan application was "Robert L. BEARDEN Jr." BEARDEN reported that he was the 100% owner of RLB, a sole proprietorship. RLB reportedly began operations on 07/08/2017 and had three employees with annual gross revenue of $156,000. BEARDEN again requested that the funds be directed to  Bank Checking Account number ending in 752, the same account provided for the 24 Karat Gold House EIDL. On 07/08/2020, the SBA declined this EIDL application for RLB.

15. Per SBA records, BEARDEN attempted to apply for additional fraudulent EIDLs. On 07/06/2020, BEARDEN reported to the SBA he was an Independent Contractor for a company doing business as "Robert Bearden" ("RB") that was opened on 01/15/2020. BEARDEN reported that he owned 100% of the company, which had three employees. The gross revenue for the 12 months prior to the disaster for RB was $35,000. On 07/07/2020, the SBA declined the loan application for RB.

16. When comparing SBA applications, RLB and RB had the same phone number, (330) 839-5989, and the same business and personal email address on the applications, @gmail.com. The home address for BEARDEN on the RB application was . This address was on the same street where BEARDEN's ex-girlfriend lived. The home address for BEARDEN on the RLB application was . The phone number for the 24 Karat Gold House SBA application that BEARDEN provided was , the SUBJECT TELEPHONE NUMBER 1. BEARDEN provided the email address @yahoo.com as both the business email of 24 karat Gold House and his personal email.

17. Victim 1 also provided the name of another victim (Victim 2). Victim 1 described Victim 2 as someone whose information BEARDEN used to apply for a loan to be directed to BEARDEN's own account.

18. Victim 1 provided Agents with text messages pertaining to SUBJECT TELEPHONE NUMBER 1. In the text messages from August 2020, Victim 1 discussed with BEARDEN an EIDL application that BEARDEN told Victim 2 he would not complete. On August 5, 2020, at approximately 1:01 PM, BEARDEN texted Victim 1, "Im busy counting DOE." BEARDEN texted Victim 1 at 2:34 PM, "Im bout to plan a trip and take her anywhere she wana go," referring to taking a trip with his then-girlfriend. Victim 1 stated BEARDEN was going to take the trip with the loan funds he received from Victim 2. At 2:37 PM, BEARDEN responded that he had "13000" of his own. According to SBA records, $13,000 was the amount BEARDEN received from an SBA EIDL 24 Karat Gold House.

19. Toll records for SUBJECT TELEPHONE NUMBER 1 show that BEARDEN called the SBA at (800) 659-2955 multiple times. When recently viewed, the SBA website stated, "For help with applying for an Economic Injury Disaster Loan, call 800-659-2955." For example, on 07/15/2020, BEARDEN called (800) 659-2955 five times between 4:38 PM and 4:43 PM. SBA records show that a number of the EIDL applications associated with BEARDEN's scheme, including for 24 Karat Gold House and in the name of Victim 2, are described below.

20. Law enforcement records showed BEARDEN had an outstanding warrant for failure to appear out of South Euclid, Ohio, from a previous traffic offense. Law enforcement records also confirmed Victim 1 filed a Protection Order against BEARDEN after the

SBA EIDL was submitted, which expired.[1] BEARDEN was also arrested and charged in a domestic violence incident by South Euclid, Ohio, on 12/31/2020.

21. Agents spoke with Victim 2, who advised the following:

a. BEARDEN used the personal identifying information of Victim 2 to apply for a loan in Victim 2's name. In the summer of 2020, BEARDEN approached Victim 2 and told him he knew of a program to obtain a loan and

[1] Victim 1 sought the Protection Order for reasons other than this EIDL loan. Victim 1 had a past romantic relationship with BEARDEN and reported her belief that BEARDEN had not been faithful. The end of that relationship was acrimonious, and the dispute between them was not primarily about BEARDEN's use of her information to obtain this EIDL loan. While this relationship history may give Victim 1 some bias against BEARDEN, Agents have been able to corroborate much of the information Victim 1 provided, as described above, and Agents believe Victim 1's statements reported herein to be credible and reliable.

      grant for Victim 2. All Victim 2 needed to provide him with were his social security number, date of birth, and other personal identifying information. If BEARDEN could obtain a loan, Victim 2 would have to pay BEARDEN a fee for obtaining the loan.

b. Victim 2 initially agreed to provide BEARDEN his personal identifying information so BEARDEN could apply for a loan. BEARDEN told Victim 2 he would need to pay him $1,000 once the loan was deposited into his bank account. BEARDEN could also obtain a $5,000 grant for Victim 2. Victim 2 had to give half of the grant money to BEARDEN once he received it.

c. Victim 2 began to feel uncomfortable about receiving a loan and asked for more details from BEARDEN. After BEARDEN explained the loan to Victim 2, Victim 2 told BEARDEN he no longer wanted to receive the loan.

d. Victim 2[2] even texted BEARDEN at the SUBJECT TELEPHONE NUMBER 2 not to proceed with the loan if it was for unemployment since he received Supplemental Security Income from the Social Security Administration. BEARDEN texted Victim 2, saying he would not proceed with the loan.

e. Victim 2 started to receive bills from the SBA about a $12,300 EIDL loan in his name. Victim 2 contacted the SBA about this loan but continued to receive bills from them.

---

[2]    Text messages provided by victims and confirmed by Agents.

      f.   Victim 2 refused to pay for the loan since BEARDEN defrauded him. Victim 2 never received any funds from BEARDEN.

22.    Victim 2 provided and confirmed BEARDEN's number as SUBJECT TELEPHONE NUMBER 2. BEARDEN was named as "Punkin" in Victim 2's contact. "Punkin" was a street nickname for BEARDEN. Victim 2 provided Agents a screenshot of an application in Victim 2's name, but the banking information provided was BEARDEN's personal Bank account. Toll records for SUBJECT TELEPHONE 2 confirm that BEARDEN had multiple contacts with Victim 2. The SBA EIDL Loan Authorization Agreement for Victim 2 was signed on 07/10/2020. BEARDEN contacted Victim 2 approximately five times on 07/10/2020.

23.    SBA records confirmed that a loan was applied for a sole proprietorship painting business using Victim 2's personal identifying information. The gross revenue for 12 months before the COVID-19 pandemic for this business was reported as $98,500. The $12,300 EIDL was funded by the SBA on 07/21/2020. The bank account provided for this loan was BEARDEN's account ending in 752.

24.    Agents spoke with Victim 3, who advised the following:

      a.   In the summer of 2020, BEARDEN approached multiple individuals in the neighborhood and told them he could help them receive a loan for approximately $15,000 to $20,000. At some point, BEARDEN told Victim 3 he was approved for an $18,000 loan, but in order to receive the loan, Victim 3 had to pay BEARDEN $6,000 out of the loan.

    b. Victim 3 provided BEARDEN with his date of birth, social security account number, and          Bank account numbers after BEARDEN requested them to complete the loan application. After Victim 3 provided the information BEARDEN requested, Victim 3 never heard from BEARDEN.

    c. Victim 3 confirmed that the SBA EIDL loan application in his name was fraudulent. In 2018, Victim 3 created a painting company called                  . SBA records indicated BEARDEN applied for an EIDL loan in the name of "                  ." The gross revenue for this business was labeled as $158,000. Victim 3 confirmed that this amount was false. If the SBA had approved the loan, the funds would have been deposited into a Green Dot account. Victim 3 did not have a Green Dot account.

    d. Victim 3 did not know that his personal identifying information was used to apply for an SBA relief loan. Victim 3 would not have provided BEARDEN the information he wanted if Victim 3 knew it was for an SBA loan.

    e. Victim 3 believed BEARDEN asked multiple individuals for their personal identifying information with the intent to apply for EIDLs. Victim 3 did not know anyone who received loan funds from BEARDEN.

25. Agents spoke with Victim 4, who advised the following:

    a. Victim 4 called the Agent after Victim 4 found the Agent's business card in their mailbox. Victim 4 worked as a Chef, and he owned a catering business since 2019 where he estimated his gross income between $100,000 to

$175,000 before the COVID-19 pandemic. Victim 4 heard about COVID-19 pandemic assistance for small businesses on the television, but he did not know how to apply for assistance. Victim 4 had 16 children and 32 grandchildren, and he was worried about how he was going to provide for his family with his business shutting down.

b. In the Summer of 2020, Victim 4 was approached by BEARDEN, who talked to him about the SBA EIDL. BEARDEN told Victim 4 he could help him receive an EIDL for his catering business, and he assured Victim 4 the loan did not need to be paid back. BEARDEN was not considered a close friend of Victim 4, but Victim 4 went to school with BEARDEN and knew him for several years.

c. BEARDEN convinced Victim 4 to provide him with his personal identifying information and banking information to apply for an EIDL. An EIDL was deposited into Victim 4's account for $34,800. After receiving the EIDL, Victim 4 provided BEARDEN $6,000 in cash. Victim 4 did not want to provide BEARDEN with cash, but he felt like he had to do it because BEARDEN applied for the EIDL and asked to get paid.

d. Victim 4 repeatedly asked BEARDEN for a copy of the EIDL application for his records, but BEARDEN never provided him a copy. At some point, BEARDEN changed his contact number, and Victim 4 could no longer reach him. Victim 4 started to receive bills from the SBA to repay the EIDL. Victim

        4 paid $170 a month to the SBA for the EIDL. Victim 4 was upset because he remembered BEARDEN told him the EIDL did not need to be paid back. Victim 4 paid the loan payments because he did not want to get into trouble with the SBA.

    e. Victim 4 was not present with BEARDEN when the application was submitted. Victim 4 confirmed he had four employees working for him. The Agent explained to Victim 4 that the EIDL he received was for a business called "                            ." This business was reportedly established on 03/21/1998 and had 15 employees. The gross revenue for this business was $259,000. Victim 4 confirmed the information on the EIDL application was false. Victim 4 did not tell BEARDEN what to put on the EIDL application. BEARDEN never told Victim 4 what he put on the EIDL application in Victim 4's name.

***Images on BEARDEN's phone:***

    26.    The images on the SUBJECT TELEPHONES came into law enforcement possession in the following way: On 12/31/2020, at approximately 4:00 PM, South Euclid, Ohio Police located and arrested BEARDEN on a probable cause domestic violence incident. BEARDEN was arrested at his residence, located at                             . On January 4, 2021, investigators applied for, and the Honorable David A. Ruiz, U.S. Magistrate Judge for the Northern District of Ohio, issued, warrants authorizing investigators to search and seize the SUBJECT TELEPHONES to image or extract

the contents of the SUBJECT TELEPHONES to preserve the electronically stored data on them, but not to examine the contents without further authorization or consent.  Investigators thereafter extracted the electronically stored data on the SUBJECT TELEPHONES to preserve the stored data, creating the images.

27.     02/02/2021, two search warrants were issued out of the Northern District of Ohio for the content on BEARDEN's smartphones. The images in SUBJECT TELEPHONE 1 included:

  a. A picture of the SBA website with an application for COVID-19 relief in the amount of $13,800. Due to the blurriness of the photograph, the name being used to apply for this loan was unknown.

  b. A picture of a social security card and Ohio identification card for a "          ." Law enforcement records showed           died on 11/18/2020.       's personal identifying information was used in an attempt to apply for an EIDL loan with a company called "             ." This company claimed to have a gross revenue of $136,000. The EIDL was never funded for this company.

  c. A picture of the date of birth, email address, and residential address for "         ," as well as a picture of a routing number and bank account number for        Bank.

  d. A picture of an SBA loan application in the amount of $34,800 for a "            ." The address for        was                           ,

. Per SBA records, the company in 's name was " ." The application was created on 07/15/2020. The business was listed as a proprietorship with a gross revenue of $259,000. The address used for the business was . On 07/16/2020, the SBA approved a loan in the amount of $34,800 and deposited the funds into a account.

e. A picture of an SBA loan application in the amount of $13,800 for a " with an address of " ." SBA records confirmed 's name was used to apply for an EIDL which was declined. The address for was . The EIDL was never funded.

f. A picture of an SBA loan in the amount of $25,000 for a " " with an address of . SBA records confirmed 's name was used in an attempt to obtain an EIDL loan for a company called " " The gross revenue for this business was listed as $165,000, and the business address was . The SBA never funded the loan.

g. A picture of an SBA loan application number The name associated with this application was ," whose address was . The SBA never funded this loan.

    h. A picture of an SBA loan application with the name " ," whose address was listed as . The picture focused on a status message that read, "Your application has been approved."

i. A picture of an SBA loan application showing the amount confirmed as "$12,300" and the status message of "Your application has been approved."

j. A picture zoomed in on "$12,300" on an SBA loan application.

k. A picture of a text message with an individual named as " In BEARDEN's phone. In the body of the text, the address, banking information, and social security number was provided with a name as " ." BEARDEN asked for "Date of birth?" and "Wat bank?" responded, " an ." SBA records confirmed personal identifying information was used for an EIDL loan for a company called " ." The gross revenue was listed as $189,000. The business address was listed as , which was the same address in BEARDEN's message when asking for the banking information of

l. A picture of a screenshot message with an individual named " " The screenshot showed an unidentified individual holding a voided paper check with the name " " with the routing number and account number in plain view. The next text message provided on the screenshot was the name " " and a date of birth, social

security number, and address for         . SBA records confirmed         's personal identifying information was used to apply for an EIDL for a company called "        ." The gross revenue for this company was listed as $210,000, and the address was              . The address texted to BEARDEN was "              ."

m. A picture of an SBA loan application in the amount of "$34,800." The name on the application appeared to be          .

n. A picture of an SBA loan application in the amount of "$22,300." The name on the application appeared to be          .

o. A picture of an SBA loan application in the amount of "$13,800" with a status of "Your application is being processed."

p. A picture of an SBA loan application in the amount of "$25,000" with a status of "Your application is being processed."

q. A picture of an SBA loan application in the amount of "$22,300" with a status of "Your application is being processed."

r. A picture of a lender match application to the SBA with BEARDEN's name, contact number, and email address. The lender match was for a company called                ."

   i. The description read, "My neighborhood boutique store supplies infant, kids clothes, adult women and men clothes and accessories… Watches,

       purses, belts, hats, ect… I will buy plenty of inventory as well as hire more employees and add more security systems to protect my business… Also buy clothes racks and glass showcases to hold more inventory as well as shoe racks, a new add on to my products to sell.. Got a lot of requests from customers to order kids shoes."

ii. The question of "How much funding do you need?" was answered with "$75,000."

iii. The funds would be used for "purchasing inventory." and the industry type was listed as "Retail."

iv. The estimated average annual revenue for this company was listed as "$179,000."

v. A screenshot was taken of the SBA confirming the submission of the Lender Match Request.

***Interview of BEARDEN***

28. On 01/05/2021, Agents interviewed BEARDEN at the South Euclid Police Department after he was arrested for domestic violence incident. BEARDEN verified he owned a business he called "24 Karat Gold" which specialized in gold electroplating services. He opened this business in 1998. In 2019, BEARDEN claimed he made $70,000 as the sole employee of 24 Karat Gold.

29. BEARDEN admitted to talking with Victim 2 about applying for an EIDL loan and showed him how to apply for one using Victim 1's laptop. BEARDEN could not remember if he assisted Victim 2 with applying for a loan.

30. After Agents confronted BEARDEN on why an EIDL loan was deposited into his Bank account in the amount that was used with Victim 2's personal identifying information , BEARDEN claimed that Victim 2 had asked him to have the funds deposited into his account because Victim 2 did not have a bank account. BEARDEN claimed $10,000 was deposited into his Bank checking account. BEARDEN claimed to have given Victim 2 $6,000, and he could keep $4,000 at the direction of Victim 2. BEARDEN could not explain why Victim 2 allowed him to keep nearly half of his EIDL loan.

31. SBA records showed that on 07/10/2020, Victim 2 was approved for an EIDL in the amount of $12,300. Bank records showed that on 07/13/2020, SBA deposited $12,300 into BEARDEN's Bank checking account. On 07/08/2020, Bank records showed the SBA deposited an EIDL in the amount of $13,000 into BEARDEN's checking account. After this was explained to BEARDEN by the Agents, BEARDEN no longer wanted to speak with them, and the interview was terminated.

**CONCLUSION**

32. Based on my experience with investigating complex financial crimes, I believe that BEARDEN likely used the SUBJECT TELEPHONES to coordinate with other fraudsters and potential victims to apply for EIDL loans, grants, and other financial pandemic assistance. I also believe that calls made and received, telephone numbers, text messages, and pictures stored

in the memory of the SUBJECT TELEPHONES which may identify other persons involved in this fraudulent scheme, indicate what BEARDEN was doing with the proceeds of the Target Offenses, and show that BEARDEN was the user of the SUBJECT TELEPHONES. Victim interviews also confirmed BEARDEN's intent to defraud the United States by applying for EIDL's with the personal identifying information of individuals who he was associated with. BEARDEN knowingly falsified information to Agents during his interview on his roll involving the Target Offenses. Bank records show that BEARDEN received fraudulent proceeds from the SBA EIDL loan program in the summer of 2020.

33. Based on the foregoing, I respectfully submit that there is probable cause to believe that ROBERT BEARDEN committed the Target Offenses, and to issue the requested arrest warrant.

Respectfully submitted,

Matthew Scalisi
Special Agent
Federal Bureau of Investigation

Sworn to via telephone after submission by reliable electronic means. Crim.Rules. 4.1; 41(d)(3)

Thomas M. Parker
United States Magistrate Judge
**2:22 PM, May 17, 2021**

